FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 22, 2016

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CARLA FRANCES BLUM, | No. 1:15-CV-03212-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | ECF Nos. 15, 20 |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 20. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 20).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

1  "substantial gainful activity," the Commissioner must find that the claimant is not

2  disabled.  20 C.F.R. § 404.1520(b).

3       If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

6  from "any impairment or combination of impairments which significantly limits

7  [his or her] physical or mental ability to do basic work activities," the analysis

8  proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

9  does not satisfy this severity threshold, however, the Commissioner must find that

10  the claimant is not disabled.  20 C.F.R. § 404.1520(c).

11       At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 404.1520(d).

17       If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is

capable of performing past relevant work, the Commissioner must find that the

claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1  capable of performing other work; and (2) such work "exists in significant

2  numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

3  700 F.3d 386, 389 (9th Cir. 2012).

4  ## ALJ'S FINDINGS

5  Plaintiff applied for disability insurance benefits June 30, 2012, alleging

6  disability since February 1, 2011.  Tr. 160-61.  Plaintiff's application was denied

7  initially, Tr. 106-13, and on reconsideration, Tr. 116-17.  Plaintiff appeared at a

8  hearing before an Administrative Law Judge (ALJ) on January 14, 2014.  Tr. 44-

9  71.  On January 30, 2014, the ALJ denied Plaintiff's claim.  Tr. 37.

10  At the outset, the ALJ found that Plaintiff met the insured status

11  requirements of the Act with respect to her disability insurance benefit claim

12  through June 30, 2013.  Tr. 28.  At step one, the ALJ found that Plaintiff had not

13  engaged in substantial gainful activity from the alleged onset date, February 1,

14  2011, through her date last insured, June 30, 2013.  Tr. 28.  At step two, the ALJ

15  found that Plaintiff has the following severe impairments: lumbar spinal

16  degenerative disc disease; obesity; diarrhea; and headaches.  Tr. 28.  At step three,

17  the ALJ found that Plaintiff does not have an impairment or combination of

18  impairments that meets or medically equals a listed impairment.  Tr. 30.  The ALJ

19  then concluded that Plaintiff has the following RFC:

20

1
2
3

through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she could perform unskilled, routine, repetitive work.  She would have been off task 10 percent of the time at work, but would still have met minimum production requirements.

4
5
6
7
8
9
10

Tr. 31.  At step four, the ALJ found that Plaintiff could not perform her past relevant work.[1]  Tr. 35.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert, there are jobs in significant numbers in the national economy that Plaintiff could perform, such as production assembler and housekeeper.  Tr. 36.  On that basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social Security Act.  Tr. 37.

11
12
13

On October 19, 2015, the Appeals Council denied review, Tr. 1-4, making the Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

14
15

_____

16
17
18
19
20

[1] The VE testified that Plaintiff could perform her past relevant work as a cashier, but because she did not perform this work at substantial gainful activity levels, the ALJ found that it could not be used at step four of the sequential evaluation process.  Tr. 36 at n.3.  The ALJ went on to find at step five that the cashier job was an additional job that Plaintiff could perform.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability income benefits under Title II of the Social Security Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly weighed the medical opinion evidence;

2.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

3.  Whether the ALJ made a proper step five finding.

ECF No. 15 at 4.

**DISCUSSION**

**A.  Medical Opinion Evidence**

First, Plaintiff faults the ALJ for discrediting the opinion of examining physician William Drenguis, M.D., and reviewing physician Howard Platter, M.D. ECF No. 15 at 6-9.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

*1. Dr. Drenguis*

Dr. Drenguis performed a consultative examination on November 4, 2012. Tr. 284-90.  Plaintiff complained of frequent diarrhea, migraine headaches, right knee pain, and right shoulder pain.  Tr. 284.  Dr. Drenguis reviewed two records: a September 2009 lumbar MRI, Tr. 235, and a "function report" that is not otherwise

1   identified.  Tr. 284.  He opined that Plaintiff could stand and walk about six hours

2   in an eight-hour workday, "if she is not symptomatic for her irritable bowel

3   syndrome [IBS] or headaches" and could sit without limitations "if she is not

4   having an episode of [IBS]." Tr. 287.  Dr. Drenguis further found that, due to right

5   shoulder biceps tendinitis, Plaintiff was limited to lifting and carrying 20 pounds

6   occasionally, ten pounds frequently, and occasionally reaching.  Tr. 287-88.  The

7   ALJ gave these assessed limitations little weight.

8        Plaintiff contends that the ALJ should have credited limitations caused by

9   IBS and headaches, as well as reaching limitations.  ECF No. 15 at 6-8.

10        The parties agree that examining physician Dr. Drenguis's opinion is

11   uncontradicted, meaning the ALJ was required to provide clear and convincing

12   reasons, supported by substantial evidence, for rejecting his opinion.  ECF No. 15

13   at 7; ECF No. 20 at 3.  Here, the ALJ provided several clear and convincing

14   reasons for rejecting some of Dr. Drenguis's opinion.

15                    *a. Knee Limitations Unsupported by Objective Findings*

16        First, the ALJ gave Dr. Drenguis's opinion limited weight because assessed

17   knee limitations were not supported by objective findings.  Tr.  30.  An ALJ may

18   discredit opinions that are conclusory, brief, and unsupported by the record as a

19   whole, or by objective medical findings.  *Batson v. Comm'r of Soc. Sec. Admin.*,

20   359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v. Sullivan*, 981 F.2d 1016,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

1019 (9th Cir. 1992)); *Tonapetyan v. Chater*, 242 F.3d 1144, 1149 (9th Cir. 2001).

First, the ALJ noted Plaintiff told Dr. Drenguis that she had experienced right knee

pain for five years.  Tr. 30 (citing Tr. 284).  Dr. Drenguis diagnosed internal knee

derangement.  Tr. 30 (citing Tr. 287).  The ALJ found, however, that Dr.

Drenguis's examination of Plaintiff's knees was entirely normal.  Tr. 30 (citing Tr.

286) (knee joint range of motion was within normal limits, both hip and ankle joint

range of motion were also within normal limits).  Tr. 33 (citing Tr. 286).  In

addition, Dr. Drenguis found that Plaintiff's station (the way that Plaintiff stood)

was stable, a Romberg test was negative, and gait was normal.  *Id.*  Further, as the

ALJ pointed out, Dr. Drenguis found that Plaintiff was able to tandem walk, toe

and heel walk, hop, and squat.  *Id.*  Dr. Drenguis diagnosed "internal derangement

of the right knee *by history with no findings on exam today.*"  Tr. 30 (citing Tr.

287) (emphasis added).  Because an ALJ is not required to credit opinions that are

unsupported by objective evidence, this was a clear and convincing reason to

discredit the opinion.

   Moreover, the ALJ found that the only other objective findings with respect

to Plaintiff's knee were assessed five years before Dr. Drenguis's examination.  In

November 2007, Plaintiff reported to treatment provider Robert Merkel, PAC, that

she experienced knee pain after she fell.  Tr. 30 (citing Tr. 248).  The ALJ found

that the objective findings, six weeks after Plaintiff fell, were entirely normal.  *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1    The ALJ found, for example, with respect to both knees, that x-rays showed no

2    pathology.  The ALJ further found that Plaintiff demonstrated full range of motion;

3    and there was no joint deformity, heat, swelling, erythema, or effusion.  *Id.*  In

4    addition, the ALJ found that a Lachman's test was negative; all ligamentous

5    endpoints were intact; there was no pain with meniscal grind, no effusion, and

6    Plaintiff's patella tracks were appropriately in groove.  *Id.*  Following this 2007

7    examination, the ALJ found, Mr. Merkel assessed a knee sprain.  Tr. 30 (citing Tr.

8    248).  Significantly, the ALJ found that, thereafter, from November 30, 2007, until

9    Dr. Drenguis's evaluation five years later, in November 2012, Plaintiff did not

10   report knee pain.  Tr. 30.  The ALJ concluded that this lack of treatment indicated

11   the 2007 knee sprain had resolved.  Tr. 30.  The ALJ also noted that Plaintiff

12   suffered a right ankle fracture in October 2008, but thereafter, Plaintiff made no

13   further complaint of right ankle pain.  Tr. 30 (citing Tr. 250).  The ALJ then found

14   that, because the earlier knee sprain had resolved and Dr. Drenguis's diagnosis of

15   internal knee derangement was not supported by his own or any other objective

16   findings, that no medically determinable knee impairment was established.  Tr. 30.

17   The ALJ's reason is clear, convincing and supported by the record.

18            *b. Opinion Based on Unreliable Self-Report*

19            Second, the ALJ rejected some of Dr. Drenguis's assessed limitations

20   because they appeared to be based on Plaintiff's unreliable self-report (*see infra*).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Tr. 34.  An ALJ is not required to accept a medical opinion that is "largely based" on a claimant's non-credible self-reports.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  The ALJ found, for example, that Plaintiff told Dr. Drenguis she had to use the restroom 10 to 20 times daily for five days at a time, Tr. 284, which conflicts with treatment records that do not show Plaintiff complained of needing to use the restroom frequently.  Tr. 34.  A lack of supporting medical evidence of bowel issues led the ALJ to reason that Dr. Drenguis must have based his opinion of these limitations on Plaintiff's unreliable self-report.  The ALJ found, for example, that treatment records do not show Plaintiff sought or received treatment of any kind for diarrhea.  Tr. 34; *see, e.g*., Tr. 254 (for example, in July 2010, Plaintiff did not complaint of nor seek treatment for diarrhea); Tr. 256 (in November 2011, Plaintiff again did not complaint of nor seek treatment for diarrhea).  Nor do records show that Plaintiff told her treatment providers of any ongoing problems with incontinence, despite her function reports that allege these problems.  Tr. 34; *see, e.g.,* Tr. 200 (for example, a November 19, 2012, function report indicates "If I don't have access to a bathroom within a couple [of] minutes I have an accident.").  Because the medical evidence does not support these complaints, the ALJ reasonably found that Dr. Drenguis must have relied primarily on Plaintiff's unreliable self-report when he assessed limitations related to frequent diarrhea.  Similarly, the ALJ found that Dr. Drenguis's assessed limitations related

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

1 to Plaintiff's headaches[2] were unsupported by treatment records.  Medical records

2 do not show that Plaintiff regularly sought treatment for allegedly disabling

3 headaches, again lending support to the ALJ's conclusion that Dr. Drenguis must

4 have relied on Plaintiff's unreliable self-report when he assessed limitations related

5 to migraine headaches.  Because an ALJ is not required to credit opinions based on

6 a claimant's unreliable self-report, the ALJ's reason is clear, convincing, and

7 supported by the record.

8 *c. Right Shoulder Limitation Unsupported by Medical Records*

9 The ALJ rejected Dr. Drenguis's assessed reaching limitations because

10 Plaintiff sought no treatment for shoulder pain prior to Dr. Drenguis's examination.

11 Tr.  29-30, 288.  Factors relevant to an ALJ's evaluation of any medical opinion

12 include the amount of relevant evidence that supports the opinion, the quality of

13 the explanation provided in the opinion, and the consistency of the medical opinion

14 with the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

15 With respect to shoulder complaints, Dr. Drenguis diagnosed right biceps

16 tendinitis.  Tr. 34 (citing Tr.  287).  With respect to shoulder complaints, Dr.

17 Drenguis's examination findings appeared to support his diagnosis.  Dr. Drenguis

18 ───────────────

19 [2] Dr. Drenguis opined Plaintiff could stand and walk for six hours in an eight-hour

20 day if not symptomatic for IBS or headaches.  Tr. 34 (citing Tr. 287).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

1   opined that Plaintiff was limited to reaching only occasionally, due to right biceps

2   tendinitis.  Tr. 288.  The ALJ rejected this limitation, however, because Plaintiff

3   did not seek any treatment for right shoulder complaints prior to Dr. Drenguis's

4   examination.  Tr. 34.  The ALJ further found that the medical record does not

5   establish that the shoulder impairment is an impairment that has or will limit

6   Plaintiff's functioning for twelve continuous months, as required.  Tr. 34.  *See*

7   *Miller v. Colvin*, 174 F.Supp.3d 1210, 1219 (D. Ariz. March 31, 2016) (citing 42

8   U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any

9   substantial gainful activity by reason of any medically determinable physical or

10  mental impairment which can be expected to last for a continuous period of not

11  less than 12 months[.]")).

12      The ALJ provided clear and convincing reasons, supported by the record, for

13  giving Dr. Drenguis's assessed reaching limitation little weight.

14      Plaintiff contends that the ALJ should have adopted Dr. Drenguis's postural

15  limitations because they are supported by a September 2009 lumbar MRI.  ECF

16  No. 15 at 8 (referring to Tr. 288).  The ALJ rejected Dr. Drenguis's assessed

17  postural limitations because, other than his findings with respect to Plaintiff's right

18  shoulder biceps tendinitis, they were unsupported by his own examination

19  findings.  Tr. 34 (citing Tr. 288).  These findings included normal lumbar range of

20  motion, as well as normal strength in all extremities, and normal gait.  Tr. 286.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

1    Plaintiff offers a different interpretation of the evidence.  However, where the

2    evidence is susceptible to more than one rational interpretation, one of which

3    supports the ALJ's decision, the ALJ's conclusion must be upheld.  *Thomas v.*

4    *Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec.*

5    *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

6        The ALJ provided several clear and convincing reasons, supported by

7    substantial evidence, for discrediting Dr. Drenguis's assessed limitations.

8        *2. Dr. Platter*

9        Dr. Platter performed a record review on December 10, 2012.  Tr. 97-99.  He

10   opined that Plaintiff was limited to occasional pushing, pulling, and reaching with

11   her right upper extremity, needed to have easy access to bathrooms, and would be

12   capable of lighter work activity when the intermittent IBS symptoms and migraines

13   were not severe.  Tr. 35 (citing Tr. 98).

14            *a. Ability to Work Despite Migraine Headaches*

15       The ALJ rejected Dr. Platter's opinion that Plaintiff could only perform

16   lighter work activity when migraine headaches were not severe.  Tr. 35 (citing Tr.

17   98).  An ALJ may reject the opinion of a non-examining physician by reference to

18   specific evidence in the medical record.  *Sousa v. Callahan*, 143 F.3d 1240, 1244

19   (9th Cir. 1996); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

The ALJ rejected this limitation because Plaintiff worked for many years despite migraine headaches.  Tr. 34-35.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  The ALJ found, for example, that Plaintiff testified she had suffered from migraine headaches since childhood, yet she worked at the level of substantial gainful activity for many years.  Tr. 34 (citing Tr. 48-49).  Despite suffering migraine headaches since childhood, Tr. 48-49, the record shows that Plaintiff had remained insured for DIB purposes through June 30, 2013, meaning that she had been able to work. Tr. 28. In addition, Plaintiff's earnings record showed substantial gainful activity through 2007.  Tr. 164.  The ALJ found that Plaintiff's ability to work for years with essentially the same limitation assessed by Dr. Platter, migraine headaches, undermined Dr. Platter's opinion that Plaintiff was more severely limited.

Because an ALJ may reject an opinion that is inconsistent with a claimant's functioning, *Morgan*, 169 F.3d at 601-02, the ALJ's reason is supported by specific evidence in the record.

### b. Treatment Records Do Not Indicate Worsening Headaches

Dr. Platter opined that Plaintiff could perform lighter work activity when migraines were not severe.  Tr. 98.  The ALJ rejected this assessed limitation due to migraine headaches because the medical evidence does not reveal worsening

headaches, as Plaintiff has alleged.  Tr. 33-35.  An ALJ may discount an opinion that is unsupported by objective findings.  *Batson*, 359 F.3d at 1195.  Here, the ALJ found that treatment records "list variants of migraine as a chronic problem," but that on only one occasion, in March 2011, Plaintiff complained of headaches to a treatment provider.  Tr. 33 (citing Tr. 262).  The record shows that Plaintiff received no treatment or medication for allegedly disabling migraine headaches during the relevant period.  An ALJ need not accept the opinion of any physician if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957.  The ALJ's reason is specific and supported by the record.

### c. Activities Are Inconsistent With Frequent, Disabling Headaches

The ALJ rejected Dr. Platter's assessed limitations due to headaches because they are inconsistent with Plaintiff's reported activities.  Tr. 34-35.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02.  For example, the ALJ found that Plaintiff's ability to shop in stores once a week, drive, do laundry, clean, and prepare meals, was inconsistent with Plaintiff's complaints of disabling headache symptoms.  Tr. 34 (citing Tr. 191-92) (Plaintiff's September 2012 function report).  The ALJ further found that, although Plaintiff indicated that her spouse helped her, she also testified that her spouse receives disability benefits and has physical issues.  Tr. 34 (citing

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

Tr. 57-58).  Plaintiff has alleged that migraine headaches last for four days, Tr. 59,

and she has them twice a week, Tr. 209, but this internally inconsistent and

inconsistent with the ability to shop once a week, drive, and do household chores.

Tr. 33.  The ALJ's reason is specific and supported by the record.

### d. Lack of Complaints of Bowel Problems

Dr. Platter opined that Plaintiff could only perform lighter work activity

when "bowel issues were not severe."[3]  Tr. 35 (citing Tr. 98).  The ALJ rejected

this limitation because treatment records fail to show that Plaintiff told treatment

providers that she experienced frequent diarrhea and repeated episodes of

incontinence.  Tr. 35.  An ALJ may reject an opinion that is unsupported by the

record as a whole or by objective findings.  *Batson*, 359 F.3d at 1195.   For

example, the ALJ found that incontinence is mentioned only once in the medical

record, and even then, not as an ongoing problem.  Tr. 33 (citing Tr. 240-41).  The

ALJ's reason is fully supported by the record.

---

[3] Dr. Platter also opined that Plaintiff required easy access to bathrooms.  Tr. 98.

The ALJ rejected this limitation because Dr. Platter did not define "easy access,"

and because Plaintiff testified that she did not go anywhere where she was more

than 20 to 30 minutes away from a bathroom, indicating that she does not need to

be "right next to a bathroom."  Tr. 35 (citing Tr. 52).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

*e. Reliance on Properly Rejected Opinion*

Next, the ALJ rejected Dr. Platter's more dire assessed limitations because they appear to rely on limitations assessed by Dr. Drenguis, limitations that the ALJ properly rejected. Tr. 35 (citing Tr. 98, 287-88). An ALJ may reject an opinion that is based heavily on another physician's properly discredited opinion. *Paulson v. Astrue*, 368 Fed.App'x 758, 760 (9th Cir. 2010) (unpublished). The record supports the ALJ's reasoning. *See, e.g.*, Tr. 99 (Dr. Platter limited right arm reaching to occasionally, and also opined that Plaintiff could perform light exertion work when bowel symptoms and migraines were not severe, and "easy access" to bathrooms required ); Tr. 288 (Dr. Drenguis assessed the same limitations, except that he did not opine that Plaintiff required easy access to bathrooms).

*f. Opinion Inconsistent With Objective Findings*

The ALJ found that Dr. Platter's assessed postural limitations, Tr. 98-99, were inconsistent with objective examination findings. Tr. 35 (citing Tr. 98, 286-87). An ALJ may discount an opinion that is unsupported by clinical findings. *Batson*, 359 F.3d at 1195. The ALJ found, for example, that Dr. Platter opined Plaintiff's "right knee pain" and history of lower back pain supported postural limitations. Tr. 35 (citing Tr. 98). However, the ALJ further found that Dr. Drenguis's examination revealed normal lumbar range of motion and normal strength, which contradicted Dr. Platter's assessed postural limitations. Tr. 35

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20

1  (citing Tr. 286-87).  Because an ALJ may reject an opinion that is unsupported by

2  clinical findings, *Thomas*, 278 F.3d at 957, the ALJ provided another specific

3  reason supported by the record for affording reviewing physician Dr. Platter's

4  opinion limited weight.

5      In sum, the ALJ assessed an RFC for a range of light work, which credited

6  Dr. Platter's RFC with respect to Plaintiff's ability to lift, carry, stand, and walk.

7  Tr. 33 (citing Tr. 98).  The ALJ found that these assessments were consistent with

8  the imaging studies (Tr. 235), and with Plaintiff's normal gait, strength and lack of

9  neurological deficits on examination.  Tr. 35 (citing Tr. 286-87).

10     The ALJ properly weighed the medical evidence.

11 **B. Adverse Credibility Finding**

12     Next, Plaintiff faults the ALJ for failing to provide specific findings with

13 clear and convincing reasons for discrediting her symptom claims.  ECF No. 15 at

14 9-12.

15     An ALJ engages in a two-step analysis to determine whether a claimant's

16 testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

17 determine whether there is objective medical evidence of an underlying

18 impairment which could reasonably be expected to produce the pain or other

19 symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

20 "The claimant is not required to show that her impairment could reasonably be

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

1    expected to cause the severity of the symptom she has alleged; she need only show

2    that it could reasonably have caused some degree of the symptom." *Vasquez v.*

3    *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

4        Second, "[i]f the claimant meets the first test and there is no evidence of

5    malingering, the ALJ can only reject the claimant's testimony about the severity of

6    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

7    rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

8    citations and quotations omitted).  "General findings are insufficient; rather, the

9    ALJ must identify what testimony is not credible and what evidence undermines

10    the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834)); *Thomas*, 278

11    F.3d at 958 ("[T]he ALJ must make a credibility determination with findings

12    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

13    discredit claimant's testimony.").  "The clear and convincing [evidence] standard

14    is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759

15    F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278

16    F.3d 920, 924 (9th Cir. 2002)).

17        In making an adverse credibility determination, the ALJ may consider, *inter*

18    *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

19    claimant's testimony or between her testimony and her conduct; (3) the claimant's

20    daily living activities; (4) the claimant's work record; and (5) testimony from

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 32.

*1. Lack of Objective Evidence*

First, the ALJ found that the objective medical evidence did not support the degree of physical limitation alleged by Plaintiff. Tr. 32-33. Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ set out, in detail, the medical evidence regarding Plaintiff's impairments, and ultimately concluded that her allegations were inconsistent with the medical evidence. Tr. 34. Because an ALJ may consider a lack of medical evidence when weighing credibility, the ALJ provided a clear and convincing reason.

The ALJ found, for example, that Plaintiff's complaints of frequent diarrhea were not supported by objective medical evidence. Tr. 34. The ALJ found that Plaintiff did not report the problems of frequent diarrhea or incontinence to

providers.  Tr. 35.  The ALJ found, as another example, that treatment notes did not describe Plaintiff as dehydrated, as one would expect from a person experiencing such extreme symptoms.  Tr. 34.  The ALJ further found that laboratory testing showed normal electrolyte values, again contrary to expected results from a person suffering the symptomology Plaintiff described in her testimony, *i.e.,* needing to use the restroom 8 to 12 times a day during an episode.  Tr. 34 (citing Tr. 61); Tr. 282 (electrolyte values normal in February 2011).

The ALJ further found that Plaintiff's complaints of frequent migraine headaches were also not supported by the medical evidence.  Tr. 33-34.  For example, the ALJ found that treatment records list variants of migraine headaches as a chronic problem, but do not actually show Plaintiff complaining of headaches, other than on a single occasion.  Tr. 33 (citing Tr. 262) (in March 2011, Plaintiff complained of daily, mild to moderate headaches).  Plaintiff testified that she experienced severe migraine headaches twice a month, Tr. 60, but this is not supported by the objective evidence.  Because an ALJ may discount pain and symptom testimony based on lack of medical evidence, as long as it is not the sole basis for discounting a claimant's testimony, the ALJ did not err when he found Plaintiff's complaints exceeded and were not supported by objective and physical exam findings.

///

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

*2. Lack of Treatment*

Second, the ALJ found Plaintiff's complaints less than credible because Plaintiff only infrequently sought medical treatment.  An ALJ is permitted to consider lack of treatment in his credibility determination.  *Burch*, 400 F.3d at 681.  With respect to Plaintiff's claim that she suffered frequent diarrhea, the ALJ found that the treatment records do not show that Plaintiff sought or received *any* treatment for diarrhea.  Tr. 34 (emphasis added).  Treatment records do not show that Plaintiff complained to any of her providers that she needed to use the restroom frequently or had ongoing problems with incontinence.  Tr. 34.  The record supports the ALJ's findings.  This was a clear and convincing reason to find Plaintiff less than credible.

Similarly, the ALJ found the medical records did not indicate that Plaintiff regularly sought treatment for migraine headaches or shoulder pain during the relevant period.  Tr. 34.

Plaintiff contends that she failed to seek medical treatment because she could not afford it and would have had to see treatment providers too often, i.e., "every time she experienced back pain, migraines, and incontinence or bowel problems."  ECF No. 15 at 10 (referring to Tr. 217) (Plaintiff wrote: "I couldn't afford to go to the doctor every time I [had] an episode just so you [could] have medical evidence.").  Plaintiff did not testify that she failed to seek treatment due

to finances.  Because unexplained or inadequately explained failure to seek

treatment may be considered when weighing a claimant's credibility, the ALJ

provided a clear and convincing reason.  *Orn*, 495 F.3d at 635 (citations omitted).

*3. Inconsistent Statements*

The ALJ found Plaintiff's inconsistent reports of bowel symptoms and

limitations diminished her credibility.  Tr. 32-34.  "To determine whether the

claimant's testimony regarding the severity of her symptoms is credible, the ALJ

may consider, for example: (1) ordinary techniques of credibility evaluation, such

as the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid"[.]

Here, the ALJ found that Plaintiff inconsistently reported episodes of frequent

diarrhea to an examining doctor, in function reports, and in her testimony.  *See* Tr.

28 (citing Tr. 173) (in Plaintiff's August 2012 function report, she stated that

bowel problems, in part, limited her ability to work); Tr. 32 (citing Tr. 200) (in

Plaintiff's November 2012 function report, she stated that she experienced bowel

incontinence if she did not reach a restroom within a couple of minutes, and there

were only a couple of days each month when she did not experience bowel

symptoms); Tr. 32 (citing Tr. 52, 56) (at the hearing, Plaintiff testified that she was

unable to go anyplace where she could not reach a bathroom within 20 to 30

minutes); Tr. 29 (citing Tr. 284 ) (in November 2012, Plaintiff told examining

physician Dr. Drenguis that she experienced loose stools 10 to 20 times a day for about five days at a time, for the past two years, and had soiled herself during episodes of frequent bowel movements.).  Moreover, the ALJ found that Plaintiff did not report these symptoms to her treatment providers.  Tr. 33.  Notably, the ALJ found the medical records do not document that Plaintiff has ever received any treatment, nor undergone any workup, for complaints of episodic diarrhea, repeated episodes of incontinence, and the need for ready access to a restroom, as she has alleged.  Tr. 33.  The ALJ found that the only exception to this lack of findings is a medical record in August 2009, when Plaintiff reported a single episode of incontinence.  Tr. 33 (citing Tr. 240).  Significantly, the ALJ found that even in this report, Plaintiff indicated that incontinence was not an ongoing issue. Tr. 33 (citing Tr. 241).  The ALJ provided a clear and convincing reason to find Plaintiff's symptom testimony less than fully credible.

### 4. No Prescribed Pain or Prophylactic Medication

The ALJ found Plaintiff's symptom complaints less than fully credible because she took no prophylactic migraine medication, no prescribed pain medication for back or shoulder pain, and no medication for diarrhea.  Tr. 34. Instead, Plaintiff took only non-prescribed medication.  Tr. 33.  Evidence of "conservative treatment" is sufficient to discount a claimant's testimony regarding the severity of an impairment.  *Parra v. Astrue*, 481 F.3d 742, (9th Cir. 2007)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 27

(citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-counter pain medication is evidence of conservative treatment sufficient to discount a claimant's testimony regarding the severity of an impairment). Here, the ALJ found Plaintiff's complaints of severely limiting migraine headaches (for up to four days, twice a month) were less than credible because she took no medication to prevent or minimize them. Tr. 33. The ALJ further found that Plaintiff took only non-prescribed pain medication for allegedly severe back and shoulder pain. Tr. 33 (citing Tr. 62) (Plaintiff testified that she took only over- the- counter tylenol for back pain). The ALJ found that Plaintiff took no medication whatsoever for allegedly weekly disabling bowel symptoms. Tr. 32, 34 (citing Tr. 61) (Plaintiff testified she had episodes almost weekly). Significantly, the ALJ found Plaintiff testified that she did not use protective garments (such as Depend) because she would simply soil them. Tr. 33 (citing Tr. 54). As the ALJ observed, this made little sense. Tr. 33. The ALJ found that the fact that Plaintiff has never tried protective garments suggests this problem is less troublesome than alleged. Tr. 34. The ALJ provided a clear and convincing reason for finding that Plaintiff's symptom complaints were not credible.

### 5. *Complaints Inconsistent with the Ability to Perform SGA*

The ALJ found that Plaintiff has reported migraine headaches have been persistent for years, which is inconsistent with Plaintiff's ability to perform

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 28

substantial gainful activity in the past.  Tr. 33.  An ALJ may support his credibility

finding by reviewing a number of factors, including the claimant's work record.

*See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("In evaluating the

credibility of the symptom testimony, the ALJ must also consider the factors set

out in S.S.R. 88-13. . . Those factors include the claimant's work record . . .")

(citation omitted).  For example, the ALJ noted that Plaintiff testified she has

experienced migraine headaches since childhood.  Tr. 28, 33 (citing Tr. 62).

However, at the same time, Plaintiff worked for many years despite this

impairment.  Tr. 33 (noting at Tr. 28 that Plaintiff was insured through June 30,

2013).  Because an ALJ may properly consider the ability to work despite physical

impairments as lessening a claimant's credibility, *see, e.g., Gregory v. Bowen*, 844

F.2d 664, 667 (9th Cir. 1988), this was a clear and convincing reason to reject

Plaintiff's symptom testimony.

6. *Daily Activities*

The ALJ found Plaintiff's subjective complaints are inconsistent with her

daily activities.  Tr. 34 (citing Tr. 191-97).  If a claimant is able to spend a

substantial part of her day engaged in pursuits involving the performance of

physical functions that are transferrable to a work setting, a specific finding as to

this fact may be sufficient to discredit a claimant's allegations.  *Morgan*, 169 F.3d

at 600 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  Alternatively,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

1  when activities "contradict claims of a totally debilitating impairment," an ALJ

2  may discredit a claimant's testimony.  *Molina,* 674 F.3d at 1112-13 (internal

3  quotation marks and citations omitted).  Here, the ALJ found Plaintiff reported that

4  she shopped in stores once a week and drove; Plaintiff also reported that she

5  performed household chores such as laundry, cleaning and preparing meals.  Tr.

6  31-21, 34 (citing Tr. 47-48, 52, 191-93).  The ALJ found that Plaintiff indicated

7  that her husband helped her, but she also testified that her husband was receiving

8  disability benefits and had physical issues.  Tr. 34 (citing Tr. 56-58).  The ability to

9  drive, shop once a week, go to the drugstore, clean, do laundry, and prepare meals

10  is inconsistent with Plaintiff's allegedly disabling symptoms.  Moreover, as the

11  ALJ found, Plaintiff testified that she chooses not to wear protective garments,

12  such as Depend, because she would simply soil them.  Tr. 33 (citing Tr. 54).  This

13  makes little sense, since, as the ALJ observed, Plaintiff's response suggested that

14  soiling her clothing would be preferable to soiling a garment designed for this

15  purpose.  Tr. 33 (citing Tr. 54).  The ALJ reasonably inferred that Plaintiff's ability

16  to drive and shop (admittedly without wearing protective garments) is inconsistent

17  with allegedly disabling diarrhea and incontinence.  Tr. 33-34 (citing Tr. 54).  The

18  ALJ's reason is clear and convincing.  However, even if the evidence of Plaintiff's

19  daily activities in this case may be interpreted more favorably to the Plaintiff, it is

20  susceptible to more than one rational interpretation, and therefore the ALJ's

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

1   conclusion must be upheld.  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

2   2005).

3          In sum, despite Plaintiff's arguments to the contrary, the ALJ provided

4   several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

5   *See Ghanim*, 763 F.3d at 1163.

6   **C. Step Five Finding**

7          Plaintiff faults the ALJ's step five finding.  ECF No. 15 at 12-13.  However,

8   a claimant fails to show that an ALJ's step five determination is incorrect by

9   simply restating the argument that the ALJ improperly weighed the evidence.

10  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).  Because the

11  Court finds the ALJ properly weighed the evidence, Plaintiff fails to establish error

12  at step five.

13                              **CONCLUSION**

14         After review, the Court finds that the ALJ's decision is supported by

15  substantial evidence and free of harmful legal error.

16         **IT IS ORDERED:**

17         1. Defendant's motion for summary judgment (ECF No. 20) is **GRANTED**.

18         2. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

1    The District Court Executive is directed to file this Order, enter

2    **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE**

3    the file.

4    DATED this 22nd day of November, 2016.

5

6                    _S/ Mary K. Dimke_
                    MARY K. DIMKE
7                    U.S. MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20